UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARINA DE AGUIAR DIAS,<br>      Plaintiff, | )<br>)<br>)<br>) |  |
| v. | )<br>) | CIVIL ACTION<br>NO. 16-40049-TSH |
|  | )<br>)<br>)<br>) |  |
| LEONARDO EMMANUEL LEONCIO<br>DE SOUZA,<br>      Defendant. | )<br>)<br>)<br>) |  |

**ORDER**
**November 17, 2016**

**HILLMAN, D.J.**

**Background**

Marina De Aguiar Dias ("Petitioner") filed a petition for return of child (Docket No. 1)("Petition") seeking the return of her thirteen-year-old daughter, H.D., to Brazil pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, *opened for signature* Oct. 25, 1980, T.I.A.S. No. 11670 ("Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §9001 *et. seq.* (formerly 42 U.S.C. §11601). Petitioner claimed that H.D.'s father, Leonardo Emmanuel Leoncio De Souza ("Respondent") had wrongfully retained H.D. in the United States. After multiple hearings, I granted the Petition on July 28, 2016, *See Amended Mem. Of Dec. and* Order, *dated August 1, 2016* (Docket No. 25)("Prior Order"). Thereafter, Respondent, at his expense, returned H.D. to the custody of Petitioner, in Brazil.

In my Prior Order I also found that Petitioner had established the prerequisite for an award of necessary expenses under the fee-shifting provision of the ICARA, 22 U.S.C. §9007(b)(3). I ordered Petitioner to file a motion enumerating all "necessary" expenses incurred in connection with the filing of the petition and the return of H.D. to Brazil and gave the Respondent an opportunity file a response addressing whether a fee award would be "clearly inappropriate" in this case. This Memorandum of Decision and Order addresses Petitioner's Motion For Attorney's Fees Anant To 22 U.S.C. §9007(b)(3) (Docket No. 26) pursuant to which Petitioner requests an award of attorneys' fees in the amount of $28,697.50 and costs in the amount of $1,004.20, for a total award of $29,701.70. For the reasons set forth below, that motion is *granted*, but for an amount less than requested by Petitioner.

## Discussion

### Legal Standard

As the prevailing party in her suit for seeking return of the minor child, H.D, Petitioner is presumptively entitled to recover her reasonable attorneys' fees and costs:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. §9007(b)(3). The primary issues which the Court must resolve in determining whether such an award is appropriate is "first, whether the claimed expenses are 'necessary,' and second, whether an order against respondent would be 'clearly inappropriate.'" *De Souza v. Negri*, No. 14-13788-DJC; 2015 WL 727934, at *2 (D.Mass. February 19, 2015)(citation to quoted case and alterations omitted). "The burden of proof to establish necessity is upon the Petitioner." Id.

(citation omitted).  The burden to establish that a fee award would be "clearly inappropriate" is upon the Respondent.  Id.

> To determine whether a fee award should be granted, the First Circuit has interpreted 'the statute as giving the district court broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards.' The 'clearly inappropriate' standard is 'highly fact specific and involves an equitable balancing of several factors including financial circumstances.'
> In particular, 'the financial plight of the respondent is an important factor to consider.' In addition, whether 'the respondent had a reasonable basis for thinking at the time of removing the [child] to the United States … that [his] actions were consistent with [the law of the country of habitual residence], that belief, even if mistaken, is a relevant equitable factor when considering whether a cost award is appropriate.
> Notably, however, 'the fact that the respondent may already owe substantial fees to his or her own attorney does not make an award of the petitioner's attorney's fees 'clearly inappropriate." Nor does the fact that the winning petitioner's attorneys provided their services pro bono make an award of fees against the respondent "clearly inappropriate." '

*De Souza*, No. CIV.A. 14-13788-DJC, 2015 WL 727934, at *2–3 (internal citations omitted).

<u>Whether an Award is Appropriate in this Case</u>

Petitioner's motion requests reimbursement for attorneys' fees in the amount of 28,697.50, reflecting $13,960.00 in fees incurred by attorney Peter J. Duffy (34.90 hours of work at a rate of $400.00 per hour), $13,612.50 in fees incurred by attorney Phil Rakhunov (36.30 hours of work at a rate of $375.00 per hour) and $1,125.00 of paralegal time (7.50 hours of work at a rate of $150.00 per hour)[1].  Respondent asserts that Petitioner has failed to establish that the claimed attorneys' fees and costs were "necessary".  More specifically, he argues: (1) Petitioner failed to submit sufficient evidence to establish that the hourly rates charged by her legal team were reasonable, (2) Petitioner failed to provide adequate details regarding the number of hours

---

[1] The invoice submitted by Petitioner does not specify that the 7.50 hours of work performed at a rate of $150 per hour was paralegal work. Based on the number of hours worked, the nature of the work and the billing rate, Respondent has inferred that the work was completed by a paralegal.  I agree with that inference and will assume the same.

3

worked and the nature of the work performed, (3) given the relatively ordinary and routine nature of case, Petitioner's legal team overstaffed the case by utilizing two attorneys when one would have been sufficient, and (4) Petitioner incurred unnecessary fees by seeing *ex parte* orders, which were not warranted by the circumstances.

Petitioner asserts that she has limited financial means, but has not submitted any evidentiary proof of her financial status such as bank statements, tax returns, or her own sworn statement. However, her counsel have attested that she has limited financial means, which prevented her from traveling to the United States to attend to this matter in person and limited the manner in which they could communicate with her and prepare the case. Moreover, Respondent has not challenged Petitioner's assertion regarding her limited financial status. For these reasons, the Court finds that Petitioner has limited financial means. I further find as a result of Respondent's refusal to return H.D. to Brazil, the Petitioner was compelled to seek the Court's assistance. I will now determine the extent to which the attorney's fees and expenses claimed by the Petitioner in connection with securing H.D.'s return were "necessary." As part of that analysis, I will examine the rates charged and hours expended by Petitioner's legal team utilizing the now familiar loadstar method:

> [The reasonableness of attorney's fees] typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure. In fashioning the lodestar, [the] court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Subject to principles of interconnectedness, the court may disallow time spent in litigating failed claims. It also may adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter. Reasonableness in this context is largely a matter of informed judgment. There are, however, guideposts in the case law. For instance, a district court may deem an expenditure of time unreasonable if the reported hours are 'excessive, redundant, or otherwise

4

unnecessary.' By like token, it may discount or disallow the total hours claimed if it determines that the time is insufficiently documented.

*Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (internal citations and citations to quoted case omitted).

*Whether the Time Spent and Fees Charged Were Appropriate*[2]

Petitioner's attorneys provided able representation during the entirety of these proceedings. Her legal team consisted of a paralegal billed at the rate of $150.00 per hour and two partner level attorneys, one of whom billed at the hourly rate of $400.00 and one of whom was billed at the hourly rate of 375.00. Petitioner's attorneys have previously appeared before the Court and therefore, I am aware of their skill and experience. I find that the rates charged by these attorneys were reasonable considering the usual price charged for similar services in Boston, but were slightly on the high end for similar services in this area. For that reason, I am reducing each of the attorney's hourly rates by $25.00.[3] Petitioner has not provided any information as to the paralegal's experience. Moreover, I find that while it may be the norm for Boston, a rate of $150.00 per hour is high for Central Massachusetts. Therefore, I am reducing the rate charged for the paralegal to $90.00 per hour, which is in line with the rate charged by a moderately experienced paralegal in Central Massachusetts. Thus, the Court begins its analysis with a presumptive award of attorneys' fees in the amount of $26,467.50, calculated as follows: Attorney Duffy, $13,087.50, Attorney Rakhunov $12,705.00, and the paralegal, $675.00. Petitioner seeks costs in the amount of $1,004.20, for a total award of $27,471.70.

---

[2] I agree with Respondent that Petitioner's streamlined submission in support of her request for attorney's fees and costs includes only barebones details regarding the nature of the work performed, fails to include a description of the skills and experience of the members of her legal team, and makes no attempt to justify the hourly rates charged *vis a vis* the reasonable rates charged for such work in the local community (in this case, Worcester, Massachusetts). Nevertheless, Petitioner has provided sufficient information for the Court to make an in informed decision as to the reasonableness of her claimed fees and costs.

[3] The rates determined by the Court, while informative, will not be binding on attorneys in future cases who submit affidavits and other evidence in support of their fee applications.

Respondent argues that all time spent in preparation for and litigation of *ex parte* relief should be deducted because there were no emergency circumstances presented which entitled Petitioner to such relief.  I disagree. After holding an *ex parte* hearing, I found that Petitioner was entitled to emergency relief and barred Respondent from removing H.D. from this Court's jurisdiction. Nothing in Petitioner's current submissions convinces me that Petitioner's decision to proceed *ex parte* in the first instance was unwarranted.  Respondent also argues the time spent on the matter by these attorneys was unreasonable given that: (1) the "case was relatively ordinary and routine;" (2) by utilizing two senior level attorneys Petitioner's counsel overstaffed the case; (3) Petitioner's counsel overbilled for a matter that took approximately six weeks to resolve; and (4) counsel has failed to provide sufficient details regarding the services rendered. While I agree with Respondent this case was not overly complex, that is not to say that it was necessarily "ordinary and routine."  Moreover, as with most cases of this type, the matter was dealt with on an expedited basis, which meant that that counsel had an abbreviated time period in which to prepare pleadings, motions, responses and argument.  Contrary to Respondent's position, the Court does not find that the expedited schedule means that counsel should have spent less time on the case. Instead, the Court finds that having to complete the required amount of work in a short time period justified staffing the case with two attorneys.  Nonetheless, I do agree with Respondent that there was some overlap between the two attorneys and that the sparsity of detail with regard to services rendered warrants a reduction in the amount of the fees. Thus, I am reducing each attorneys' hours by approximately one third.  Therefore, I find the total necessary attorneys' fees to be $17,700.00, calculated as follows: Attorney Duffy, $8,625.00 (23.00 hours x $375.00 per hour); Attorney Rakhunov, $8,400.00 (24.00 hours x $350.00 per hour); and paralegal $675.00 (7.50 hours x $90.00 per hour). I find all costs ($1,004.20) to have

been necessary. Therefore, the total recovery of necessary attorneys' fees and costs is $18,704.20.

### *Whether an Award of Attorneys' Fees and Costs would be Clearly Inappropriate*

Respondent asserts that awarding Petitioner attorneys' fees and costs in this case would be clearly inappropriate because it would not further the objectives intended by the ICARA, *i.e.*, restoration of the applicant to the same financial position she would have been in had there been no wrongful removal or retention, and deterrence. In support, Respondent argues that because her attorney's represented her *pro bono* and she did not have to pay any expenses in connection with H.D.'s return to Brazil, Petitioner's financial position has not changed. Respondent acknowledges that this fact does not, by itself, make an award of attorneys' fees clearly inappropriate. Therefore, I will focus on the second factor, *i.e.*, deterrence.

Respondent asserts that the deterrence objective is absent from this Case because he had a good faith belief that retaining H.D. in the United States was necessary to protect her from harm and because, at the time of retention, neither party had custodial rights over H.D. I disagree with both propositions. First, it is clear that prior to Respondent retaining H.D. in the United States, she was living with her mother in Brazil. Except for the first three years of her life, when she lived with both Respondent and Petitioner, H.D. has always lived with Petitioner. It was undisputed that H.D. came to the United States on a round trip plane ticket, in the company of her paternal grandmother, for a temporary visit with her father. Under these circumstances, Respondent had no legitimate basis to retain H.D. as the "custodial" parent.

Respondent testified that he kept H.D. in the United States because of unfavorable reports his mother gave him regarding H.D.'s living conditions. However, the evidence submitted by Respondent did not support his claims: while the house H.D. was living in at the time she

traveled to the United States may have been cluttered, the photographs submitted by Respondent did not establish the residence was unsanitary.  His testimony that the Petitioner's father, with whom H.D. and Petitioner lived, was mentally unstable was undermined by his sworn statements to a Brazilian court that Petitioner's parents are good people.  Respondent also testified that he kept H.D in the United States because he feared for her safety in Brazil due to the high crime rate in the area she was living. This testimony was undermined by his failure to produce photographs or other evidence depicting a dangerous environment. His testimony that he left Brazil to come to the United States to escape the violence was undermined by his attestation on his United States entry papers that he intends to return there when he completes his education.   His stated reason for keeping H.D. in the United States were further discredited by the fact that he refused to send her back to Petitioner after Petitioner got married and moved to a new home (without her parents) in a different neighborhood. Other stated reasons for keeping H.D. in the United States, such as her lack of social life in Brazil, were contradicted by Petitioner and her husband, whose testimony I found credible.

It is clear that Respondent loves his daughter and desires to retain full custody of her. However, I do not find that he in good faith believed he had a right to keep her in the United States. Instead, I find that for purposes of these proceedings, he *post hoc* manufactured reasons to justify his wrongful retention of H.D.  Under these circumstances, I find that the deterrence objective of the ICARA's fee awarding provision clearly supports an award of attorneys' fees and costs in this case. Put another way, Respondent has failed to establish that an award of attorneys' fees and costs to Petitioner would be clearly inappropriate.[4] In light of the foregoing,

---

[4] After Respondent retained H.D. in the United States, Petitioner went to court in Brazil and obtained an order of temporary custody. It is anticipated that Petitioner and Respondent will both pursue custody of H.D. in future court proceedings in Brazil. Respondent argues that if Petitioner obtains full custody, he will be required to pay child support for H.D.—- he suggests that ordering him to pay Petitioner's legal fees and costs would interfere

the Court concludes that an award of $17,700.00 in attorneys' fees and $1,004.20 in costs is reasonable. Thus, the Court awards a total sum of $18,704.20.

## Conclusion

Petitioner's Motion For Attorney's Fees And Costs Pursuant To 22 U.S.C. §9007(b)(3) (Docket No. 26) is *granted*.  The Court awards a total sum of $18,704.20 in attorneys' fees and costs.

**SO ORDERED.**

>             /s/ *Timothy S. Hillman*
>             **TIMOTHY S. HILLMAN**
>             **DISTRICT JUDGE**

---

with his ability to pay such support. Respondent further argues that if he is granted custody by the court, it would be inappropriate to require him to pay Petitioner's legal fees and costs in connection with these proceedings. Little discussion is warranted with respect to these arguments.  Respondent put himself in this position by wrongfully retaining H.D. rather than seeking custody of her prior to bringing her to the United States. Regardless of who ultimately obtains custody of H.D., an award of attorneys' fees and costs against Respondent is warranted for wrongfully retaining custody of H.D. when it was patently clear he had no right to so.